U.S. DISTRICT COURT
N.D. OF N.Y.
FILED
JAN 20 2009
LAWRENCE K. BAERMAN, CLERK
ALBANY

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

Todd David Barton **Plaintiff(s)** )
)
)
vs. )
Pam MikelHayes, James Fenimore, )
Susan W. Hassinger, Ross Snyder, Lynn Kriss),
Paul W. Nagele, Lou Coates, **Defendant(s)** )
Theodore Vickery Jr., Susan Leaner, Gerry Pierce,
Troy AnnualConference of the United Methodist
Faith United Methodist Church, David Olsen

**Civil Case No.:** 1:09-CV-0063
NAM / DRH

**CIVIL COMPLAINT PURSUANT TO TITLE VII OF THE CIVIL RIGHTS ACT, AS AMENDED**

## JURISDICTION

1. Jurisdiction is conferred on this court pursuant to 42 U.S.C. § 2000e-5.

## PARTIES

2. Plaintiff: Todd David Barton

Address: 801 Plymouth Avenue

Schenectady, New York 12308-3511

Additional Plaintiffs may be added on a separate sheet of paper.

3. a. Defendant: Pam MikelHayes

Official Position: Lead Pastor

Address: 264 North Grand Avenue

Cobleskill, New York 12043

b. Defendant: James Fenimore

Official Position: District Superintendent

Address: 51 Pointview Drive

Troy, New York 12180

4. This action is brought pursuant to:

x Title VII of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C. § 2000e *et seq.*, and the Civil Rights Act of 1991, for employment discrimination based on race, color, religion, sex or national origin.

_____ Pregnancy Discrimination Act of 1978, codified at 42 U.S.C. § 2000e(k), as amended, Civil Rights Act of 1964, and the Civil Rights Act of 1991, for employment discrimination based on pregnancy.

5. Venue is invoked pursuant to 28 U.S.C. s 1391.

6. Defendant's conduct is discriminatory with respect to the following (check all that apply):

(A) _____ My race or color.
(B) _____ My religion.
(C) x My sex (or sexual harassment).
(D) _____ My national origin.
(E) _____ My pregnancy.
(F) x Other: My disability,gender discrimination/ male

7. The conduct complained of in this action involves:

(A) _____ Failure to employ.
(B) x Termination of employment.
(C) _____ Failure to promote.
(D) x Unequal terms and conditions of employment.
(E) _____ Reduction in wages.
(F) x Retaliation.
(G) x Other acts as specified below:

Hostile work environment, denial of equal compensation verbal harassment, held out and mocked due to my learning disability, failure to provide for my right due process, compliance an endorsement of illegal actions and violations against my person.

8. **FACTS**

Set forth the facts of your case which substantiate your claims. List the events in the order they happened, naming defendants involved, dates and places.

**Note: You must include allegations of wrongful conduct as to EACH and EVERY defendant in your complaint.** (You may use additional sheets as necessary).

1) On or about the second Sunday of July 2006, Pam MikelHayes began leading weekly services as the new lead pastor of Faith United Methodist Church (FUMC) and began to restrict my participation so that I could not fulfill duties as the Associate Pastor and began increasing the level of participation by the less senior female Associate Pastor Gail Falsetti. MikelHayes changed the format of the weekly service in an effort to limit and cause me to be questioned by the membership as to why I no longer wanted to serve as I did with the former lead pastor,Gary F. Dickson. MikelHayes This act of discrimination would continue until I was placed on a stress related medical leave on or about August 2007.

9. **CAUSES OF ACTION**

**Note: You must clearly state each cause of action you assert in this lawsuit.**

**FIRST CAUSE OF ACTION**

Plaintiff incorporates by reference the allegations in paragraphs 1- above

Gender discrimination/male: I believe I was discriminated against on the basis of my gender, male, on the basis that my assigned work responsibilities were restricted despite positive performance reviews and feedback and my raises were limited to the minimum allowed by conference guidelines while my female peer was given additional opportunities to justify advancement and was given significant pay raises beyond my salary despite the fact that she held less seniority and worked fewer hours per week.

## SECOND CAUSE OF ACTION

Creating a hostile work environment: On or about the third week of July 2006, Pam MikelHayes began creating a hostile work environment for me when she sarted to question me in regards to my utilization of learned coping skills in dealing my disability of having A.D.H.D. MikelHayes became angered with me for closing my eyes during staff meetings for 30 to 60 seconds I doth is because I am visually overly stimulated by my environment.

## THIRD CAUSE OF ACTION

Sexual harassment: MikelHayes began making unwelcomed comments about my clothin fitting good and that I was hot, despite my constaint response that I did not e her comments. The comment of a sexual nature became more alarming on or about the third week of September 2006 MikelHayes said "You look hot" and then began acting as if she were a cat with paws and began to paw at me and purr.

(please see attached sheets)

10. I filed charges with the New York State Division on Human Rights, the New York City Commission on Human Rights or Equal Employment Opportunity Commission regarding the alleged discriminatory acts on or about:

April 16 2008
(Provide Date)

11. The Equal Employment Opportunity Commission issued a Notice-of-Right-to-Sue letter (**copy attached**) which was received by me on or about:

October 17 2008
(Provide Date)

12. The plaintiff is an employee within the meaning of 42 U.S.C. § 2000e(f).

13. The defendant(s) is (are) an employer, employment agency, or labor organization within the meaning of 42 U.S.C. § 2000e(b), (c), or (d).

14. The defendant(s) is (are) engaged in commerce within the meaning of 42 U.S.C. § 2000e(g).

15. **PRAYER FOR RELIEF**

**WHEREFORE,** plaintiff(s) request(s) that this Court grant the following relief:

1. in the sum of Ten Million ($10,000,000.00) Dollars

2. Reinstatement of my pastoral license,and then retired on medical disabilty and in good standing.

3. A written/published apology in the Daily Gazzette from all involved.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: January 20,2009

Todd David Barton

Signature of Plaintiff(s)
(all Plaintiffs must sign)

BONNIE M. CHOY
Notary Public, State of New York
No. 01CH6006126
Qualified in Schenectady County
Commission Expires April 27, 2010

c. Defendant: Susan W. Hassinger

Official Position: Bishop

Address: 215 Lancaster Street

Albany, New York 12110

d. Defendant: Ross Snyder

Official Position: Chair- Staff Parish Relation Committee (SPRC)

Address: 2983 Curry Road Extension

Schenectady, New York 12306

e. Defendant: Lynn Kriss

Official Position: Chair- Staff Parish Relation Committee (SPRC)

Address: 133 Fabian Drive

Schenectady, New York 12306

f. Defendant: Paul W. Nagele

Official Position: President, Board of Trustees

Address: 2368 Jude Lane

Niskayuna, New York 12309-2204

g. Defendant: Lou Coates

Official Position: Trustee

Address: Tall Oaks Apartments

Troy-Schenectady Road (Rte. 7)

Niskayuna, New York 12309

h. Defendant: Theodore Vickery Jr.

Official Position: Secretary/ Board of Trustees

Address: 1043 Balltown Road

Niskayuna, New York 12309

i. Defendant: Susan Learner

Official Position: Former Chair SPRC/ Current lay leader

Address: 1043 Balltown Road

Niskayuna, New York 12309

j. Defendant: Gerry Pierce

Official Position: Finance Chair/ Trustee

Address: 1037 Wallace Avenue

Schenectady, New York 12306-2007

k. Defendant: David Olsen

Official Position: Acting as an agent for the Troy Annual Conference (TAC) of the United Methodist Church (UMC)

Address: 220 Ballston Avenue

Scotia, New York 12302

l. Defendant: Troy Annual Conference

Official Position: Conference of the United Methodist Church

Address: 396 Louden Road

Saratoga Springs, New York 12866

m. Defendant: Faith United Methodist Church (FUMC)

Official Position: Church in the Troy Annual Conference

Address: 811Brandywine Avenue

Schenectady, New York 12308

8. Continued.

## FACTS

**2.** On or about the third week of July 2006, at Faith United Methodist (FUMC) in Schenectady, New York, MikelHayes began to create a hostile work environment for me by challenging me over the issue of my learning disability and the learned coping skills of closing my eyes for a few moments. I employed these techniques as a way to combat my disability of A.D.H.D. MikelHayes began to embarrass me in front of the other pastors and other staff by saying comment such as, "You're so rude, why do you have to be so rude and act like you're not paying attention to me when I speak"? Her other most used comment was, "I don't care what your issues are, I find it rude and it is important that I be comfortable as the lead pastor, it is what I need that is important". Her outburst lasted until the last staff meeting I attended in July of 2007 before I was placed on a medical leave due to stress related issues.

**3.** On or about the beginning of August 2006 MikelHayes began to make unwelcomed comments about my suits and how good they fit almost on a daily basis. After the first few times I told her that her comments made me uncomfortable. She told me that if she a man and did that to a woman I wouldn't have an issue with it.

On or about September 21, 2006 MikelHayes escalated her sexual harassing comment by telling me just outside of the kitchen of FUMC, that I looked "hot" and then proceeded to act like she was a cat pawing at me with her claws and then proceeded to purr at me. I immediately complained to the other female pastor, Gail Falsetti.

4. On that same September day, at a gathering of the District Superintendents (D.S.)' "Fall Gathering" of pastors in D.S. Rev. Dr. James Fenimore's district which was hosted at FUMC, MikelHayes got up as host and thanked Pastor Gail Falsetti for all of her assistance while she was learning the ropes as a pastor, then thanked me for making her coffee in the morning, she said, "It's good to have a man around who knows his way around the kitchen, and in fact, Todd prepared everything here today, he's very useful around here". I feel this was done to belittle me in front of my colleagues.

5. On the same day, Rev. Dr. Fenimore, as the D.S. failed to reign in MikelHayes or take corrective action on my behalf, even after I told him I was embarrassed by her actions.

6. On or about the beginning of October 2006 and continuing to about January 2007, MikelHayes began to call me into her office on a consistent basis and would verbally harass me. During these sessions I was not allowed to sit in the chairs in the front of her desk because as she stated, "Your voice sickens me". I was ordered to stand near her office door after closing it and to speak in a soft tone so that I wouldn't "scare" her.

7. On or about mid-October 2006, I sought help from various Staff Parish Relation Committee (SPRC) members as, well as the, chair person to no avail. Around the same time I met with the SPRC chair, Ross Snyder at the Colonie Diner, in Colonie, New York to seek his help in dealing with the stress I was

experiencing from MikelHayes's abusive treatment of me. Snyder promised assistance, but he failed to protect me from MikelHayes.

**8.** On or about November 16, 2007, at the Starbucks in Niskayuna New York, MikelHayes told the other associate pastor Falsetti and I that she hated Dr. Judy Flower, the conference psychologist, because she flunked her on the basic minimal standard psychological evaluation. She said that the doctor said that she would most likely have a hard time with men. She said the former Bishop and D.S. sent her to someone who could pass her because she had pull due to her writing proposals for UMC clergy members to have the right to marry same sex couple.

**9.** On or about Sunday January 28, 2007 a meeting was held between the SPRC and the D.S. Fenimore at about 7:30 P.M. MikelHayes attended and Pastor Falsetti and I had to wait until it was over at about 10 P.M., from 10:00 P.M. until 10:35 P.M the other associate pastor and I were called into MikelHayes office by the D.S. and told we could not disagree with MikelHayes over anything or we would be charged with undermining a pastor, and then be fired.

D.S. Fenimore refused hear our complaint that MikelHayes was creating a hostile work environment. I told the D.S. that MikelHayes would tell the congregation that Falsetti and I would be at a specific meeting that we didn't even know about until the congregation was told about it. MikelHayes then would order us not to attend the meeting or even enter the church, or we would be faced with being charged with undermining her as the leas pastor. It had been getting back to us that MikelHayes

would actually cry in front of those attending meetings and then tell them she didn't know why we didn't show up, or why we just couldn't support her ministry. Fenimore told me to stop right there or have my license pulled which is the same as being fired.

10. On or about mid-January, MikelHayes became verbally more abusive and hostile towards me. She would call me to her office and have me shut the lights off. It was at this time she started to accuse me of trying to take over her church. She would start to yell at me that I was like every other man in the world who had kept her down and that she would get me kicked out of ministry because she had pull in the conference.

11. On or about February 1, 2007 a meeting between MikelHayes, Falsetti, and me, along with the SPRC Chair Ross Snyder, was to be held, but Snyder never attended. The meeting was suppose to be held so the pastoral team could work on "team building" techniques. Snyder didn't come and it was at this meeting that MikelHayes told me that she was going to be stepping on my toes more, because she was the leader of FUMC. MikelHayes then asked Falsetti if she could," picture an all girls pastoral team?'

12. On or about February 11, 2007, during a worship services that I was leading because it was a Stephen Ministry Sunday. Stephen Ministry is a specialized care-giving ministry, which I trained to be an instructor for in Orlando Florida about two years before MikelHayes was appointed to FUMC. It was a skit in the format of a game

show, I played the M.C. MikelHayes yelled out my name just after the skit started during my opening monologue and in front of our congregation and two of our sister churches that joined us for worship, MikelHayes yelled out that I was not annunciating clearly enough, then continued that I needed a mic because I couldn't be heard. This caused me great embarrassment in front of my congregation, guest, and family.

13. On or about February 22, 2007 MikelHayes asked me not to come to the SPRC meeting that night so she could talk to them about a private matter. I was to find out a few days later she went to them and told them I was not coming to work much the last few months and that the church could save money if the cut my position. I was appointed as a part time pastor expected to work twenty hours per week, and take two courses per semester at UAlbany. On a slow week I worked 40 plus because I was a male and a former martial arts instructor, so I was expected to cover all the night calls while still working at least 30 hours a week during the office hours.

14. Pastor Gail Falsetti a female pastor was appointed to FUMC after being licensed, I had almost three years seniority on her, Falsetti's starting salary was four thousands per year higher than mine after three years. Falsetti also worked 10 to 15 hours per week and never had to answer emergency calls and received more vacation time per year than I did. I worked over forty plus hours a week and was appointed as a half time pastor who was to work twenty hours weekly, but I always handled the emergency pastoral calls.

15. On or about the middle of March 2007, I followed the instruction of SPRC Chair Ross Snyder in regards to issues that may develop and be taken out of context within the pastoral team. Snyder instructed the pastoral team to keep him informed, I did just that over an issue, only to be told off by Snyder in an email. He reported that he had headed many of personal departments and that if I was on his team I would be gone. I took this as a threat but was going to respond to him and explain myself, but was ordered by MikelHayes to let it go. On June 20 2007 a meeting was held with Snyder in attendance, Snyder took the opportunity to go after me at this meeting with the D.S. and he failed to keep confidential our discussion at the diner and spoke freely about what I was told was a private discussion. I believe Snyder's action that night contributed to creating an even more hostile work environment and helped in my unjust firing.

16. On or about March 20 2007, I was told by MikelHayes to "icsnay' three times in the funeral director's van on the way to a cemetery. Later on in the early evening we met with a cub-scout group that one of the member's son belonged to, I was speaking to one of the little boys when MikelHayes again told me to "icsnay" several times. It was her new way to not allow for my freedom of speech and to harass me in public.

17. On or about the last Sunday April, we the three pastors were suppose to conduct multiple baptism and welcoming of new members. The D.S. was there and I was left out of the service but was still required by MikelHayes to robe and sit there. Again this was a case of gender discrimination and her way to create a hostile work environment.

I never missed a baptism until then, Pastor Gail was our music minister and now she preached and assisted in service more than I did which was gender discrimination

**18.** I spoke to the D.S. in private and was threatened again with having my license removed which is code for getting fired as a pastor. Again Fenimore again refused my pleas for help, wouldn't here my complaint and in not doing so denied my rights to due process under the law and also my right to seek redress from unwanted harassment.

**19.** On or about May 17 2007 at an administration board meeting held at FUMC, at the close of each ad bd. meeting the pastors' report on their ministries. I was up reporting when MikelHayes interrupted, as she told me she would, even though I asked her not too. She said that I had good news that I had achieved high academic honors and wanted me to speak about it. I told everyone it was no big deal and that I had gotten it before from UAlbany, MikelHayes insisted that I tell everyone who gave me that honor I said it was a dean's award. She asked who gave the luncheons, she did not stop until I told everyone that it was the Student w/Disabilities Center. It was done to mock, once again my disability.

**20.** On or about June 20 2007 a meeting was held with the D.S., MikelHayes, SPRC Chairs, Lynn Kriss, Ross Snyder, Susan Leaner, Pastor Gail, and me. Dr. Kelli Rugenstein under the Direction of Dr. David Olsen of the Samaritan Counseling Services came to meet and interview the team to see if we could be helped. Rugenstein as directed by D.S. Fenimore, only interviewed MikelHayes as to the issues and

conflicts without either Gail or me knowing that this was coming to a few days before hand. Rugenstein got the team history from MikelHayes who had only been at FUMC for a year. I had been baptized and raised in FUMC, the youngest of six children, yet I was never consulted, Gail had been working longer than MikelHayes and was never consulted. It was a set up from the start and Rugenstein found MikelHayes to be blameless. At this meeting Lynn Kriss and Susan Learner were raising their voices at me. The said I act like a two year old, and to stop acting so stupid all the time.

**21.** On or about the last week of June 2007 I tried to talk to some of the members of the SPRC in confidence, again about the abuse from MikelHayes and that I thought I was starting to suffer from a major case of depression and that I needed help. They failed to provide any help.

**22.** On or about the last week of June 2007, MikelHayes called for me to come to office at about 11:30 A.M. Toni, the admin left for the day a couple of hours latter, before she left she checked on us to see what was going on. When Toni left she left the outer office door unlocked because MikelHayes and I remained in her office. MikelHayes had actually began yelling at me for a while and I told her that I had enough and at that I had been getting told off for about three and a half hours, so I told MikelHayes that I needed to get home. As I stood up to leave her office she yelled, "Sit your fucking retarded ass down and don't you move your stupid ass till I tell you too"! She also called me a "fucking asshole". She was over heard by Rev. Pastor Robert Hundemann yelling foul names at me from clear down the hall.

**23.** On or about July 24 2007 a man on a skate board about 25 years of age almost ran into my van while he was coming down the middle of the church parking lot as I was leaving the church parking lot. The man began swinging his skate board at my van and my person. He was yelling and threatening me with bodily harm. I told him in a calm low voice if he hit me or my van he would not be leaving the parking lot the same way he entered it. I called the Schenectady Police Department to self report what occurred and while speaking with the call taker the man called my home and threatened to come and get me. I received a couple of calls from this man and he said he was down the street with someone else and they were going to hurt me. He came to my house with his friend and I told them that I wasn't afraid of them and to leave. I called the police back to let them know what happen and that the man said I had tried to run over his infant son. I called the president of the Trustees, Paul W. Nagele to let him know since he goes into the church late at night. MikelHayes was on vacation.

**24.** On or about July 31 2007, after a staff meeting, MikelHayes ask me to return to her office so we could discuss what happen in the parking lot. She told me the "nice young man told me what you tried to do to his kid". I told her of his foul language and of his swinging his skateboard at me and she said I was the one who would acted like that and not the nice young man. She then told me that one of our members Bev Borawski talked to the young man outside of the church and that Borawski was so upset that she fell against the wall and cried, "Please tell me Pastor Todd didn't molest the young child". I told MikelHayes to stop right there that she had finally gone too far and that

this was her way to get me fired, she stopped crying and laughed and said, "What could I do, I had to report you to the bishop and D.S. She ordered me not to ask Borawski anything, I did anyway and Borawski said she said no such thing. MikelHayes said I needed to respond to the charges against me.

**25.** On or about August 1 2007, I went to my office to write up my side of the story. At that time MikelHayes came up to my second floor office and asked to come in and I said no that I was responding to the charges she filed. She tried pushing open my locked door, then threatened to call emergency services on me because she thought I would commit suicide like one of my older brothers did. I told her to leave or I would call the Bishop, she sat outside of my door chanting, "Pinky swear, pinky swear, pinky swear you're alright ite". MikelHayes left and I never returned to my office alone or during the day until I cleaned it out in November 2007.

**26.** On or about August 3 2007 I met with D.S. Fenimore at his office located in Newtonville United Methodist Church, on the corner of Rte. 9 and Maxwell Road in Newtonville, New York. We discussed the parking lot incident and I asked him for help paying for counseling because I was having nightmare and depression over MikelHayes' abuse. He warned me once again that I would be fired if I didn't stop. I told him he was the person that I was supposed to talk to as per our Book of Discipline (BOD). He then said I should take some time off. I went on medical leave a few days later. He failed as the second agent in charge of the organization to hear my complaint

and threatened to fire me in retaliation for reporting my lead pastor treatment towards me.

27. On or about the first week of August 2007, the Board of Trustee of FUMC held a meeting in which MikelHayes told the board that I had opened FUMC up to a million dollar lawsuit and then further stated that she had completed her report on the parking lot incident and forwarded it to the offices of the bishop and D.S. Bishop Susan W. Hassinger, D.S. Fenimore, and Lead Pastor Pam MikelHayes posses foreknowledge that anytime a clergy member is report for a violation or misconduct, the clergy member is given the right to face his/her accuser, that a systematic investigation is begun, and if needed, a trial must be held in order to remove a pastor's credential. All of my rights to due process were violated and I believe MikelHayes was out to alarm the Trustees with her lie to cause me further duress.

28. Between the months of August, September, October, November, and December 2007 several joint meeting were held between the Board of Trustee and the SPRC at FUMC in Schenectady, New York. These were in clear violation of my right to due process found in the BOD. Clergy that come under discussion during an SPRC meeting are to be bought in for the last part of the meeting and have the core of the meeting explained to them since the SPRC is the advisory board to the D.S. and the conference Bishop. The Bishop, D.S., the SPRC Chair Lynn Kriss, the lay leader Sue Learner, and the President Paul W. Nagele, Dick Fifield Vice President, and the Secretary Theodore

Vickery Jr. had full knowledge that these meeting were held in violation of the BOD.

29. During the course of the joint SPRC/Trustees meeting, my mental stability was called into question by SPRC Chair Kriss, Lay Leader Susan Learner, Trustee member Jonie Civil, SPRC member Kim Kellman, SPRC member Gail White, et al; defamatory remarks were made by all of the above in this paragraph.

30. On or about a Sunday in the middle of August SPRC Chair Lynn Kriss released a letter informing the congregation that I was on a medical leave and that I would not be able to have visitors so that I may regain my strength and well-being and that my care-givers and the D.S. would decide when I could come back. As an R.N., Kriss well knows that she had no right to release medical information on me without my written consent. This was done to isolate me so that MikelHayes, Kriss, Learner, et al could cause harm to my personal and professional reputation.

31. On or about October 18 2007, a meeting was held at FUMC in Schenectady, New York that was open to all members of FUMC and the two female pastors and the D.S. were present as well as Kriss and Leaner. D.S Fenimore was told by FUMC's Pastor Emeritus Rev. Frankly Wright who was present at all the staff meetings said that he had never witnessed such treatment of anyone or witnessed the abuse I suffered at the hands of MikelHayes. Rev. Wright is a frail 87 year old, who was so over come with grief that he had to be helped back to his seat. D.S. Fenimore, SPRC Chair Kriss,

Learner, all ignored his plea that MikelHayes had become a detriment to my health and well-being

32. On or about October 22 2007 I was summoned to the of the D.S. James Fenimore office for what he termed, "Just a discussion to see where we are at". I told him that I thought I was being called into be fired he said no. The meeting was held at his office in Newtonville, New York. Present beside Fenimore and myself were Ian Levine a Trustee of FUMC, Rev. Bob Hundemann, Ret. but active at staff meetings, and George Castle, a member of the SPRC. It became obvious to all of us that I was there to get fired as Fenimore told them all that they should not intercede on my behalf and that I was now going to be subjected to answering charges in a "yes" or "no" format. D.S. Fenimore asked me question like had I said anything negative about MikelHayes before she came to FUMC, did I report SPRC Chair Kriss for a HIPAA violation, did I use a verbal threat to stop a young man from attacking me, did I threaten to file a charge with the EEOC against MikelHayes, I said yes and against you and the Bishop if need be. Fenimore asked again about the man in the parking lot and if I threatened him with bodily harm, I told him if he hit me with his skate board he wouldn't look as good when he left as he did when he came in. Fenimore then decided that I was fired for reporting Kriss, the parking lot incident. Fenimore was told by Rev. Hundemann that he personally over heard MikelHayes call me a "fucking retard", he further stated he ask the administrative assistant, Toni Cowie is that type of thing ever went on before? Toni responded that Pastor Todd gets called in almost daily to be told off for something or another. Rev. Hundemann asked how I handled it and Toni replied, he

just gets up and looks at me when he comes out and says he going home if anyone needs him. Fenimore said he found that hard to believe. Fenimore said I was fired for making a verbal threat in the parking lot. So I asked what he would have done and only replied, "Something different". So I asked him a couple of more times and got the same answers. So, then I asked what I should do if my family is with me and I am attacked and can't run a way, if I was an UMC pastor. He said my family and I "would have to take a beating". I told Fenimore I have constitution rights to protect myself or my family and he said not as a pastor, it was the grounds that he was going to us to fire me officially. During this meeting I told Fenimore that I was told I could worship at FUMC or enter the building or face being arrested. Fenimore said MikelHayes gave the order and that he fully supported it. I was born and raised in that church as my five older siblings were and now I would be arrested.

**33.** On or about October 22, 2007 D.S. Fenimore worked out separation agreement with Hundemann, Levine, and Castle, that would allow me to stay in the parsonage until I gained a source of income and gained enough income to be able to move. He then backed out of the deal and left my future and that of my family's under the control of Kriss which is the person he used as one of the excuses to fire me.

**34.** Fenimore met with the Board of Trustees and told them to evict me and that if they followed his game plan he would have the conference cover them in case of a lawsuit.

**35.** I was promised by Trustee President Paul W. Nagele, Trustees Lou Coates and Gerry Pierce that I would not have to move until I found work and a place to live. They then hired eviction specialist S. Scott Perkins who told them the best way to get rid of me was to have me go off, so that I would be arrested (I am diagnosed with PTSD) or else if I died from all the stress.

**36.** On or about October 25 2007, D.S. Fenimore sent out a letter informing the congregation of my firing. Fenimore stated that my unpastoral like conduct over the last year and a half, had made it necessary to pull my license (fire me). Fenimore just seven month prior to his letter dated October 25, 2007, Fenimore passed me personally during my last performance evaluation.

**37.** Paul W. Nagele and Lou Coates filed a false instrument with the Schenectady Police Department in the hopes of having me arrested. Nagele and Coates did this when in fact, just an hour or so before they told the other Trustees at their monthly meeting that they were not threatened at all by my emails. They did this on behalf of FUMC and personally

**38.** On or about May 2008, Dr. David Olsen, a psychologist hired on behalf of TAC asked for me to meet with him in an effort to bring healing. I was surprised that his main concern was in acting as an agent for TAC. Dr. Olsen main concern was getting me out of the parsonage. I asked him if what we discussed during our session was going to be made public and he replied no. Within a week or two of our meeting,

Dr. Olsen went to a meeting at FUMC and told those who attended that I was unreasonable and had dollar signs in my eye. He said I could not be reasoned with because I had become irrational. He came to this conclusion in just a 45 minutes discussion, with no battery of testing. Dr. Olsen did not have signed consent form that gave him permission to speak about our session together.

**9 continued.**

**Fourth Cause of Action**

Failure to protect and/or investigate under Title VII:

D.S. Fenimore, Bishop Susan W. Hassinger, Ross Snyder, Lynn Kriss, Susan Learner, the Troy Annual Conference of the United Methodist, Faith United Methodist Church failed to protect from the abuses I made clear were taking place towards me under Lead Pastor Pam MikelHayes. All of the above mentioned had the power of position to stop my suffering and didn't. Their stated inaction gave MikelHayes the go ahead that her action were acceptable to each of the individuals with the authority stop said actions.

**Fifth Cause of Action**

Failure to provide me with the right to "Due Process" of law:

The Troy Annual Conference of the United Methodist Church, Faith United Methodist Church, D.S. Fenimore, Bishop Susan W. Hassinger, Ross Snyder, Lynn Kriss, Susan Learner, failed to provide me the right to "Due Process" found within Federal Statues, and the Book of Discipline of the United Methodist Church. All of the above mentioned failed to provide an avenue for my complaints to be heard, and did not allow me due

process when seeking to defend myself under false allegation. This continued to occur on about July 2007 to present day.

**Sixth Cause of Action**

Retaliator Firing:

Bishop Susan W. Hassinger, D.S. James Fenimore, and TAC fired me for reporting my lead pastor, MikelHayes' abuse towards me to them in an effort to stop her aggression. The above mentioned fired me On October 22, 2007 for verbally defending myself when coming under a physical attack by a male about 25 years of age. All of the above fired me in retaliation for reporting my SPRC Chair Lynn Kriss for making false allegation of my mental and emotional well being, with having full knowledge of the HIPAA Laws as she is currently and has been for over thirty years a R.N.

EEOC Form 161-B (3/98)

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To: Todd D. Barton
801 Plymouth Avenue
Schenectady, NY 12308

From: Buffalo Local Office
6 Fountain Plaza
Suite 350
Buffalo, NY 14202

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 525-2008-00595 | Nelida Sanchez, Investigator | (716) 551-4442 |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Elizabeth Cadle,
Director

OCT 17 2008
*(Date Mailed)*

Enclosures(s)

cc: TROY ANNUAL CONFERENCE OF THE UNITE
396 Lancaster Avenue
Saratoga Springs, NY 12866