UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TODD DAVID BARTON,

                            Plaintiff,

     v.                       09-CV-00063

PAM MIKELHAYES, JAMES FENIMORE,
SUSAN W. HASSINGER, ROSS SNYDER,
LYNN KRISS, PAUL W. NAGELE, LOU COATES,
THEODORE VICKERY, JR., SUSAN LEARNER,
GARY PIERCE, TROY ANNUAL CONFERENCE
OF THE UNITED METHODIST, FAITH UNITED
METHODIST CHURCH, AND DAVID OLSEN,

                            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

       Plaintiff, Todd Barton, commenced this action pro se against Defendants Pam MikelHayes, James Fenimore, Susan W. Hassinger, Ross Snyder, Lynn Kriss, Paul W. Nagele, Lou Coates, Theodore Vickery Jr., Susan Learner, Gerry Pierce, Troy Annual Conference (TAC) and Faith United Methodist Church (FUMC) pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (Title VII).  In his Complaint, Plaintiff alleges: (1) gender discrimination; (2) a hostile work environment; (3) sexual harassment; (4) violation of due process; (5) failure to protect against or investigate Title VII allegations; and (6) retaliatory firing.  Plaintiff is requesting damages in the sum of Ten Million Dollars, reinstatement of his pastoral license, retirement on medical disability and in good standing, and a published apology in the Daily Gazzette [*sic*] from all involved.

Before the Court is Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  Defendants' motion argues that: (1) Plaintiff's claims are barred by the relevant statute of limitations; (2) Plaintiff failed to exhaust administrative remedies; (3) there is no individual liability under Title VII; and (4) Plaintiff fails to state a claim upon which relief can be granted.

Although the original return date of the motion was June 26, 2009, the Court granted Plaintiff an extension on the basis of medical problems.  On July 29, 2009 Plaintiff filed a letter motion requesting that: (1) the Court accept Plaintiff's late response to Defendants' motion; and (2) the Court allow Plaintiff to file a 59 page memorandum of law "in opposition of [*sic*] motion to dismiss . . . and in support of summary judgment."  In an order filed July 29, 2009 the Court allowed the opposition papers and the"cross-motion" to be filed. Plaintiff argues that his Complaint complies with the statute of limitations and all applicable administrative requirements and that he states a claim for relief on all counts.  On Aug. 28, 2009, Defendants responded to Plaintiff's cross motion.  After Plaintiff's reply was first rejected, he filed a reply on Sept. 14, 2009.

## I.      FACTS

Plaintiff was employed as a part time pastor for the Faith United Methodist Church. As a part time pastor, Plaintiff was expected to work twenty hours per week and take two courses per semester at University at Albany.  Despite the job description, Plaintiff maintains that he worked over 40 hours a week and was expected to cover all the night calls because he was a male and a former martial arts instructor.

Plaintiff's claims stem from a number of incidents at work, beginning in July of 2006, when Defendant MikelHayes began leading weekly services as the new lead pastor. Plaintiff alleges that Defendant MikelHayes discriminated against him because of his gender by creating a hostile work environment and sexually harassing him.  In support of these allegations, Plaintiff contends that MikelHayes: (1) changed the format of the service to restrict his participation and work responsibilities in weekly services and to increase the participation of a less senior female Associate Pastor; (2) limited his raises to the minimum allowed by conference guidelines while at the same time giving Plaintiff's "female peer . . . additional opportunities to justify advancement and . . . significant pay raises"; (3) belittled and embarrassed him in front of other pastors and the congregation for his disabilities; (4) berated him in her office; and (5) sexually harassed him by complimenting his appearance, calling him "hot", saying how they would look good as a couple, and purring and pawing at him, despite being asked to stop.  Plaintiff alleges that he informed the other Defendants of the abusive treatment by MikelHayes and how he felt about the situation but that they failed to take any protective action.  Plaintiff's Complaint alleges that when Plaintiff complained about the discrimination he was threatened with the loss of his pastoral license.

Plaintiff alleges that on July 24, 2007, a young man on a skateboard almost ran into his van in the church parking lot.  The young man threatened Plaintiff.  Plaintiff told the man that if he hit him or his van he would not be leaving the parking lot in the same way he entered it.  The incident resulted in the man and his friend coming to Plaintiff's house and police involvement.  Plaintiff informed the church of the incident.

As a result of this incident, Defendant MikelHayes reported Plaintiff to the Bishop and District Superintendent Fenimore. On August 3, 2007, Plaintiff met D.S. Fenimore to

discuss the parking lot incident.  Plaintiff brought up MikelHayes' conduct and Fenimore

warned Plaintiff that if he did not stop complaining he would be fired.  Plaintiff took medical

leave a few days later.

Between August and December of 2007 Defendants held several meetings to

discuss Plaintiff's mental stability.  Plaintiff alleges these meetings were a violation of his

rights under the Church's Book of Discipline which allowed him to have the meetings

explained to him.  Defendant Kriss released a letter to the congregation informing them that

Plaintiff was on medical leave without Plaintiff's consent.  Finally on October 22, 2007,

Plaintiff was called into D.S. Fenimore's office and fired.  Plaintiff and his family were then

evicted from the parsonage.

Plaintiff filed charges with the Equal Employment Opportunity Commission (EEOC)

regarding the above described allegations on April 16, 2008.  The EEOC issued a Notice-of-

Right-to-Sue letter on October 17, 2008.  Plaintiff filed the instant Complaint on January 20,

2009.

## II.        STANDARD OF REVIEW

When ruling on a motion to dismiss, "the court must accept the material facts

alleged in the complaint as true and construe all reasonable inferences in the plaintiff's

favor."  Burns v. Trombly, 624 F. Supp.2d 185, 196 (N.D.N.Y. 2008)(citing Hernandez v.

Coughlin, 18 F.3d 133, 136 (2d Cir. 1994)).  "'[A]lthough a court must accept as true all of the

allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and

'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice.'" Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (citing Ashcroft v.

Iqbal, 129 S. Ct. 1937, 1949 (2009)).  Therefore, to survive a motion to dismiss, the plaintiff must provide "the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" Camarillo v. Carrols Corp., 518 F.3d 153, 156 (2d Cir. 2008) (citations omitted).  Plaintiff's factual allegations must be sufficient to give the defendant "fair notice of what the claim is and the grounds upon which it rests." Camarillo, 518 F.3d at 156 (citing Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007)).

"[W]hether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Harris, 572 F.3d at 72 (citing Ashcroft, 129 S. Ct. at 1950).  Review is "limited to the facts asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." Medtech Prods. v. Ranir, LLC, 596 F. Supp.2d 778, 802 (S.D.N.Y. 2008) (citing McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 190 (2d Cir. 2007); see Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000)(citing Cosmas v. Hassett, 886 F.2d 8, 13 (2d Cir. 1989)) (the court may review documents integral to the Complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the Complaint as exhibits and any statements or documents incorporated into the Complaint by reference.).

## III.      DISCUSSION

Plaintiff alleges that he was discriminated against on the basis of his sex, retaliated against for complaining about the discrimination, and subjected to a hostile work environment, all in violation of Title VII.

### a.      Individual Liability

As a preliminary issue, Defendants argue that Plaintiff's Title VII claims against the individual Defendants must be dismissed because Title VII precludes individual liability. "Although individual liability for work place discrimination is sometimes possible under various state and federal causes of action, controlling precedent holds there is no individual liability under Title VII." Lore v. City of Syracuse, 585 F. Supp.2d 345, 357 (N.D.N.Y. 2008); see also Mandell v. County of Suffolk, 316 F.3d 368, 377 (2d Cir. 2003); Wrighten v. Glowski, 231 F.3d 119, 120 (2d Cir. 2000); Tomka v. Siler Corp., 66 F.3d 1295. 1313 (2d Cir. 1995), *abrogated on other grounds by* Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998). Accordingly, Plaintiff's claims against Defendants MikelHayes, Fenimore, Hassinger, Snyder, Kriss, Nagele, Coates, Vickery Jr., Learner, and Pierce must be dismissed.

### b.      Statute of Limitations

Defendant alleges that Plaintiff did not comply with the prerequisites of a Title VII Complaint. "An aggrieved employee wishing to bring a Title VII claim in federal court for conduct that occurred in New York must first exhaust administrative remedies by filing a complaint with the Equal Employment Opportunity Commission (EEOC) or the New York State Division of Human Rights within 300 days of the alleged discriminatory act or acts." Wall v. Town of Niskayuna, 2009 WL 290454, at *6 (N.D.N.Y. February 5, 2009); see 42 U.S.C. § 2000e et seq.; Ledbetter v. Goodyear Tire & Rubber Co., Inc., 550 U.S. 618 (2007); Williams v. N.Y. City Hous. Auth., 458 F.3d 67.69 (2d Cir. 2006). " The statutory filing period is 'analogous to a statute of limitations.'"   Wall, 2009 WL 290454, at *6 (quoting Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 712 (2d Cir. 1996)).  After a complaint is filed with

the EEOC, a plaintiff may request a notice-of-right-to-sue from the EEOC.  To file a complaint in Federal Court a plaintiff must file within 90 days of receiving this notice-of-right-to-sue.

### 1.    Administrative Complaint

Defendants allege that many of the discriminatory acts alleged by Plaintiff occurred more than 300 days before Plaintiff's filing of the administrative complaint on April 16, 2008. Any acts that took place before June 21, 2007, *i.e.* 300 days before the filing of Plaintiff's initial EEOC complaint, are time barred unless the limitations period is tolled.  "The limitations period may be tolled by either evidence of a continuing violation, or waiver, estoppel, or equitable tolling."  Carrasco v. New York City Off-Track Betting Corp., 858 F. Supp. 28, 31 (S.D.N.Y. 1994); see Delaware State College v. Ricks, 449 U.S. 250 (1980).  "The continuing violation exception applies to cases involving specific discriminatory policies or mechanisms." Carrasco, 858 F. Supp. at 31 (quoting Lambert v. Genesee Hosp.*,* 10 F.3d 46, 53 (2d Cir.1993)). "Under the continuing violation exception to the Title VII limitations period, if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims or acts of discrimination under that policy will be timely even if they would be untimely standing alone." Id. (citing Cook v. Pan Am. World Airways, Inc.*,* 771 F.2d 635, 646 (2d Cir.1985), cert. denied*,* 474 U.S. 1109, 106 S.Ct. 895, 88 L.Ed.2d 929 (1986)). "The continuing violation exception applies to cases involving *specific* discriminatory policies or mechanisms such as discriminatory lists, ... or discriminatory employment tests." Id. (emphasis added) (citations omitted).  Because Plaintiff does not allege a continuing violation, waiver, or estoppel, any alleged discriminatory acts occurring prior to June 21, 2007 are time-barred and, therefore, must be dismissed.

**2.     Plaintiff must file a Title VII Complaint within 90 days of receiving a right to sue letter from the EEOC.**

Defendants next allege that the Plaintiff did not file his Complaint within 90 days of receiving the notice-of-right-to-sue.  The notice-of-right-to-sue was mailed on October 17, 2008 from Buffalo, New York to Plaintiff's address in Schenectady, New York.  Plaintiff filed his Complaint on January 20, 2009 95 days after the notice-of-right-to-sue was mailed.  This Court finds it plausible that Plaintiff filed within 90 days of his receipt of the notice-of-right-to-sue.

**c.     Whether Plaintiff's Complaint must be Dismissed for Failure to Exhaust Administrative Remedies**

Defendants also argue that Plaintiff's Title VII claim for employment discrimination must be dismissed as to FUMC for failure to exhaust administrative remedies.  "A prerequisite to commencing a Title VII action against a defendant is the filing with the EEOC or authorized state agency of a complaint *naming the defendant*."  Johnson v. Palma, 931 F.2d 203, 209 (2d Cir. 1991) (emphasis added); 42 U.S.C. § 2000e-5(e). The EEOC notice-of-right-to-sue letter, attached to Plaintiff's Complaint, was issued only with regard to Defendant TAC. Plaintiff contends, however, that he amended his original EEOC complaint to include the FUMC.  In support of his assertion he produced an unsigned and unsworn EEOC complaint and a signed letter to the EEOC seeking to amend the complaint.

In a factually analogous case, Mann v. Sunshine Biscuit, 1998 WL 352534 (S.D.N.Y. April 23, 1998), the Court found that "the EEOC right-to-sue letter, attached to the Complaint, indicates that plaintiff only named defendant Sunshine Biscuit . . . in the EEOC charge" and held that "the failure to name defendant . . . warrants dismissal of the claims against it irrespective of the facts plaintiff may be able to allege." See also Marshall v.

National Ass'n. of Letter Carriers BR36, 2003 WL 22519869, at *11 (S.D.N.Y. November 7, 2003) (holding that "because NALC was not named in the EEOC charge and right to sue letter, Marshall cannot bring a Title VII action against NALC); Rojas v. Manhattan Jeep Eagle, 1996 WL 556937, at *4 (S.D.N.Y. Oct. 1, 1996) ("The right-to-sue letter names only one party as "respondent"-Jeep Eagle. It is this "respondent" which the right-to-sue letter identifies as the only party that the plaintiff has a right to sue in federal court."). Similarly, because only Defendant TAC was listed on Plaintiff's notice-of-right-to-sue, Plaintiff has failed to exhaust his administrative remedies as to the FUMC. Therefore, Plaintiff's claim against FUMC must be dismissed.

### d.   Gender Discrimination

Defendants contend that Plaintiff fails to state a cause of action for unlawful employment discrimination. "To establish a prima facie case of discrimination, plaintiff must show: (1) '[he] is a member of a protected class; (2) [he] is qualified for [his] position; (3) [he] suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination.'" Lore, 585 F. Supp.2d at 361 (quoting Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000)). It is undisputed that Plaintiff is able to show that he is a member of a protected class, *i.e.* male, and that he was qualified for his job as a pastor as he passed his performance evaluation.

The only remaining Defendant is TAC. Plaintiff alleges that TAC is his employer within the meaning of Title VII. The employer may be held responsible for Title VII violations if: (1) the party alleged to be the perpetrator was the plaintiff's supervisor; (2) a tangible employment action was taken against the plaintiff in connection with the violation; and (3) the

employer did not exercise reasonable care to prevent and correct the violation.  E.E.O.C. v. Rotary Corp., 297 F. Supp.2d 643, 663 (N.D.N.Y. 2003).

In his Complaint, Plaintiff alleges that Defendant MikelHayes, the Lead Pastor and Plaintiff's supervisor, intentionally discriminated against him because he was a male.  Plaintiff alleges that he complained about her actions to the District Superintendent, Defendant Fenimore, who told Plaintiff that if he did not stop complaining he would be fired.  Plaintiff alleges that according to the Church Book of Discipline the "agent in charge of the organization" who Plaintiff could talk to about discrimination, hostile work environment. and harassment issues was D.S. Fenimore.  Additionally, Plaintiff alleges circumstances that give rise to an inference of discrimination.  Plaintiff alleges that when Defendant MikelHayes took over as lead pastor, Plaintiff began to experience a decrease in his work responsibilities and did not receive pay increases while a less experienced female associate pastor received raises and increased responsibilities.  This treatment continued until he took medical leave and was fired.   Plaintiff maintains that MikelHayes admitted to having problems working with men stating she "flunked her . . . basic minimal standard psychological evaluation" and "that the doctor said that she would most likely have a hard time with men." Because Plaintiff alleges disparate treatment based on his gender by his direct supervisor which lead to a decrease in his job responsibilities and eventually his termination, Plaintiff has sufficiently alleged gender discrimination.

### e.    Hostile Work Environment/Sexual Harassment

Defendants argue that Plaintiff's allegations of do not rise to the level of a hostile work environment.  A claim of hostile work environment requires a showing: (1) "that the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's

employment and create an abusive working environment,' and (2) that a specific basis exists

for imputing the objectionable conduct to the employer." Alfano, 294 F.3d at 373 (quoting

Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997) (internal citations and quotation

marks omitted)). Additionally, "in order to establish a sex-based hostile work environment

under Title VII, a plaintiff must demonstrate that the conduct occurred because of [his] sex."

Id. (citing to Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001)).

A plaintiff can make a showing of hostile work environment by demonstrating either

"that a single incident was extraordinarily severe, or that a series of incidents were

'sufficiently continuous and concerted' to have altered the conditions of [the plaintiff's]

working environment." Id. (quoting Cruz v. Coach Stores Inc., 202 F.3 560, 570 (2d Cir.

2000) (internal quotations omitted)).  To be considered a hostile environment the workplace

must be "so severely permeated with discriminatory intimidation, ridicule, and insult that the

terms and conditions of [the plaintiff's] employment were thereby altered."  Id.; see also

Leibovitz v. N.Y. City Transit Auth., 252 F.3d 179, 188 (2d Cir.2001) (citing Meritor Sav.

Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)); Brennan v. Metro. Opera Ass'n, Inc., 192 F.3d

310, 318 (2d Cir.1999).  In determining whether this threshold has been met "courts examine

the case-specific circumstances in their totality and evaluate the severity, frequency, and

degree of the abuse."  Id.; see Harris v. Forklift Sys. Inc., 510 U.S. 17, 23 (1993) (relevant

factors include "the frequency of the discriminatory conduct; its severity; whether it is

physically threatening or humiliating, or a mere offensive utterance; and whether it

unreasonably interferes with an employee's work performance.").  The Supreme Court held

that "a hostile work environment claim is composed of a series of separate acts that

collectively constitute one unlawful employment practice."  National R.R. Passenger Corp. v.

<u>Morgan</u>, 536 U.S. 101, 116 (2002).  Therefore, the Supreme Court held that as long as "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." <u>Id</u>. at 117.

Plaintiff alleges that Defendant MikelHayes sexually harassed him when she made "unwelcome comments about [his] clothing fitting good [*sic*] and that [he] was hot."  Plaintiff states that he did not like her comments and told her to stop.  Specifically, Plaintiff alleges "on or about the third week of September 2006 MikelHayes said 'You look hot' and then began acting as if she were a cat with paws and began to paw at me and purr."  Because these allegations occurred before June 28, 2007, they are time-barred unless a timely allegation can contribute to a hostile work environment based on gender discrimination.

Plaintiff does not allege any sexual harassment after June 28, 2007.  The only allegations made after June 28, 2007 are that Plaintiff  was yelled at by his superior Defendant MikelHayes, called a "fucking retarded ass" and a "fucking asshole," mocked for his disabilities in front of his co-workers and the congregation, and the congregation was notified of his medical leave without his consent.  Plaintiff maintains that as a result of this treatment he became depressed and had to take medical leave. Plaintiff alleges that these isolated incidents occurred because Defendant MikelHayes was discriminating against him because he was male. The Court finds that Plaintiff's allegations are not sufficiently linked to gender and do not rise to the level of a hostile working environment.  Accordingly, Plaintiff's cause of action for hostile work environment and sexual harassment must be dismissed.

**f.      Failure to Protect and/or Investigate under Title VII**

Defendants argue that Title VII does not create an independent cause of action against an employer for the mishandling of employee's discrimination complaints and therefore the cause of action for "failure to protect and/or investigate" must be dismissed. Plaintiff alleges that he reported the discrimination through the correct channels but was told to stop complaining or he would be fired.  Plaintiff's allegations are evidence supporting a cause of action for gender discrimination but do not support an cause of action independent from those already alleged. Plaintiff's cause of action for failure to protect and/or investigate is dismissed.

**g.      Violation of Due Process**

Defendants argue that Defendants did not violate Plaintiff's due process rights because Plaintiff's expectation of continued employment is not a protected property interest pursuant to the Fifth or Fourteenth Amendments.  A defendant cannot be held liable for a due process violation unless that defendant is acting under color of state law. Story v. Green, 978 F.2d 60, 62 (2d Cir. 1992) (to state a claim under with the Due Process Clause or the Takings Clause, plaintiff are required to allege facts showing that state action deprived them of a protected property interest.).  Here, Plaintiff alleges that he was denied due process when Defendants "failed to provide an avenue for [his] complaints to be heard" and did not allow him to defend himself from July 2007 until the present day.  Because the Defendants are not acting under color of state law Plaintiff's cause of action for due process violations must be dismissed.

### h.    Retaliatory Firing

To establish a Title VII retaliation claim, Plaintiff must show that: (1) "'[he] was engaged in a protected activity; (2) the employer was aware of that activity; (3) [he] suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action.'" Perez v. New York and Presbyterian Hosp., 2009 WL 3634038, at *15 (S.D.N.Y. November 3, 2009) (quoting Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1178 (2d Cir. 1996)).  Plaintiff has established that he suffered an adverse action when was terminated from his job as an associate pastor.

It is well established that reporting instances of discrimination is a protected activity under Title VII.  Plaintiff alleges that he reported abuse by lead pastor MikelHayes to his superiors and, in retaliation, he was fired.  "Proof fo the causal connection can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." Manoharan v. Columbia University College of Physicians & Surgeons, 842 F.2d 590, 593 (2d Cir. 1988).  On August 3, 2007 Plaintiff "met with D.S. Fenimore at his office . . . and asked him for help paying for counseling because [he] was having nightmare [*sic*] and depression over MikelHayes' abuse." Plaintiff alleges that in response to his complaint, Fenimore "warned [him] once again that [he] would be fired if [he] didn't stop.  Plaintiff alleges this was the "second agent in charge of the organization to hear [his] complaint and threatened to fire [him] in retaliation for reporting [his] lead pastor [*sic*] treatment towards [him].  Plaintiff was fired two months later.  Furthermore, Plaintiff alleges that at the meeting where he was fired he was asked whether Plaintiff threatened "to file a charge with the EEOC against MikelHayes" and Plaintiff answered yes.  Because Plaintiff alleges that he was fired

for reporting MikelHayes' conduct to his superiors, Plaintiff has sufficiently pled a cause of action for retaliatory firing in violation of Title VII.

## IV.        CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED as to MikelHayes, Fenimore, Hassinger, Snyder, Kriss, Nagele, Coates, Vickery, Learner, Pierce, and Fath United Methodist Church.  Defendants' motion [dkt. #39] is GRANTED as to Troy Annual Conference on the claims of Hostile Work Environment, Sexual Harassment, Failure to Protect and/or Investigate Title VII violations, and Due Process Violation, and DENIED as to Gender Discrimination and Retaliatory Firing.  Plaintiff's motion for summary judgment [dkt. #57] is DENIED for failure to follow Local Rule 7.1.[1]

IT IS SO ORDERED.

DatedMarch 15, 2010

Thomas J. McAvoy
Senior, U.S. District Judge

---

[1] That rule requires that a party moving for summary judgment file a Statement of Material Facts with each material fact that the moving party contends there exists no genuine issue accompanied by a specific citation to the record.  N.D.N.Y. L. R. 7.1(a)(3).  This rule clearly states that the "[f]ailure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion." Id.