**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**TODD DAVID BARTON,**

                                        **Plaintiff,**

**-against-**                                                        **09-CV-0063**


**PAM MIKELHAYES, JAMES FENIMORE,**
**SUSAN W. HASSINGER, ROSS SNYDER,**
**LYNN KRISS, PAUL W. NAGELE, LOU COATES,**
**THEODORE VICKERY, JR., SUSAN LEARNER,**
**GERRY PIERCE, TROY ANNUAL CONFERENCE**
**OF THE UNITED METHODIST, FAITH UNITED**
**METHODIST CHURCH and DAVID OLSEN,**

                                        **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


## DECISION & ORDER


**I.  INTRODUCTION**

        Plaintiff Todd David Barton commenced this action *pro se* against Defendants

pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (Title VII).  In his

Complaint, Plaintiff alleged claims of: (1) gender discrimination; (2) hostile work

environment; (3) sexual harassment; (4) violation of due process; (5) failure to protect

against or investigate Title VII allegations; and (6) retaliatory firing.  Plaintiff seeks

damages in the sum of Ten Million Dollars, reinstatement of his pastoral license, retirement on medical disability and in good standing, and a published apology in the local newspaper.

On March 15, 2010, the Court issued a Decision and Order that dismissed all of Plaintiff's claims against all Defendants except his gender discrimination and retaliatory firing claims against Defendant Troy Annual Conference of the United Methodist ("TAC"). See Barton v. MikelHayes, No. 09-CV-0063 (N.D.N.Y. March 15, 2010)[Dkt. # 65] reported at 2010 WL 980708 (N.D.N.Y. March 15, 2010).   TAC now moves to dismiss the remaining claims for lack of subject matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1). Defendant's motion argues that (1) there is religious reason why Plaintiff's pastoral appointment was revoked by Defendant, and that, therefore, (2) the Court lacks subject matter jurisdiction to hear Plaintiff's Title VII claims under the "ministerial exception," a constitutional doctrine that prohibits a Court from engaging in excessive entanglement with religion.

Plaintiff failed to oppose Defendant's motion seventeen calendar days prior to the motion's return date, September 13, 2010, as required by the Local Rules of the Northern District.  However, Plaintiff did submit an untimely opposition on September 14, 2010, without supporting affidavits, in which he argues that the ministerial exception does not prohibit the Court from hearing this case because (1) Defendant failed to offer a religious reason for its action before this stage in the litigation, and therefore, the religious reason is merely "rhetorical posturing," and (2) whether Defendant applied the Book of Discipline provision that Plaintiff allegedly violated equally to all similarly situated pastors is not a question that is religious in nature. (Dkt. # 85).   Although Plaintiff did not timely respond

2

and offered no justification for his delay thereby providing a justification for the Court to ignore his response,[1] the Court will grant Plaintiff some leeway due to his *pro se* status and will consider his arguments in addressing this motion.

## II.   STANDARD OF REVIEW

A case is to be dismissed for lack of subject matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.  Makarova v. United States, 201 F. 3d 110, 113 (2d Cir. 2000).  A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. See Luckett v. Bure, 290 F.3d 493, 497 (2d Cir. 2002); see also Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996).  When a defendant moves to dismiss claims pursuant to Fed. R. Civ. P. 12(b)(1), "the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction." Cedars-Sinai Medical Ctr. v. Watkins, 11 F.3d 1573, 1583 (Fed. Cir. 1993).  For the purposes of such a motion, "the allegations in the complaint are not controlling . . . and only uncontroverted factual allegations are accepted as true." Id.

Both the movant and pleader may use affidavits and other pleading materials to support or oppose a motion to dismiss for lack of subject matter jurisdiction.  See

---

[1]The Local Rules of the Northern District provide that opposing papers to dispositive motions must be filed with the court and served upon the other parties not less than seventeen days prior to the return date of the motion.  N.D.N.Y.L.R. 7.1(b)(1).  The Court "shall not consider any papers under this Rule that are not timely filed . . . unless good cause is shown."  N.D.N.Y.L.R. 7.1(b)(3).  When no opposing papers are filed within this time frame, the Court must determine whether the moving party has met its burden to "demonstrate entitlement to the relief requested."  Este-Green v. Astrue, 2009 WL 2473509, at *2 (N.D.N.Y. Aug. 7, 2009).  An inquiry into whether a movant has met his or her burden under Local Rule 7.1(b)(3) is "modest," as it only requires that the movant present an argument that is "facially meritorious."  Id.

Makarova, 201 F.3d at 113; Filetech S.A. v. France Telecom, S.A., 157 F.3d 922, 932 (2d Cir. 1998); John Street Leasehold, LLC v. Capital Mgt. Res., L.P., 2001 WL 310629, at *2 (S.D.N.Y. March 29, 2001).  Further, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." Gunst v. Seaga, 2007 WL 1032265, at *2 (S.D.N.Y. March 30, 2007) (quoting Shipping Financial Services Corp. v. Drakos, 140 F.3d 129 (2d Cir. 1998)).  "Thus, the standard used to evaluate a Rule 12(b)(1) motion is similar to that used for summary judgment under Fed. R. Civ. P. 56." Lopresti v. Merson, 2001 WL 1132051, at *5 (S.D.N.Y. Sept. 21, 2001).

## III.    BACKGROUND

This Court assumes a certain familiarity with the underlying facts of the case.   See, Barton v. MikelHayes, 2010 WL 980708 (N.D.N.Y. March 15, 2010).   However, some additional facts must be mentioned as these facts are particularly relevant to the analysis of whether the ministerial exception applies in this case.

The United Methodist Church is divided into several jurisdictional "Conferences" based upon geographic locations.  [Fenimore Aff. ¶ 3].  Defendant Troy Annual Conference of the United Methodist Church (TAC) is one such Conference.  [Fenimore Aff. ¶ 3].  The United Methodist Church follows both divine law, established by the teachings of the Bible and Jesus Christ, and man-made law, contained in the Book of Discipline ("BOD").  [Fenimore Aff. ¶ 4].  The BOD is the book of law of the United Methodist Church, providing the rules and regulations under which each United Methodist

4

Church shall operate.  [Defendant Ex. A: BOD (Episcopal Greetings)].

The BOD empowers the Bishop to revoke the appointment of a local pastor for any of the violations enumerated under BOD Section 2702.  [Fenimore Aff. ¶ 23-24, 34].  One such violation includes 2702(1)(g),  "relationships and/or behavior that undermines the ministry of another pastor."  [Defendant Ex. A: BOD (Chargeable Offenses and the Statute of Limitations)].  According to a binding decision of the United Methodist Church Judicial Council, the highest judicial body in the Church, the BOD "does not impose upon the bishop any criteria, constraint, or guideline for the discontinuance of a local pastor's appointment." [Fenimore Aff. ¶ 26; UMC Judicial Council Decision 982].

In a letter dated October 23, 2007, James Fenimore, Albany District Superintendent of the TAC, informed Plaintiff that Bishop Hassinger had withdrawn Plaintiff's pastoral license based on Plaintiff's unpastoral-like conduct, "as outlined in the Book of Discipline ¶ 320." [Defendant Ex. N].   According to Fenimore's sworn testimony, Bishop Hassinger made the decision to withdraw Plaintiff's license because Plaintiff violated BOD Section 2702(1)(g) when he demonstrated patterns of behavior that undermined the ministry of Lead Pastor MikelHayes, including openly criticizing MikelHayes' theology with congregants of the Church.  [Fenimore Aff. ¶ 34].  According to Fenimore's sworn testimony, this decision was therefore both within the Bishop's authority and "based upon religious grounds." Id.

On May 8, 2008, the Albany District Committee on Ordained Ministry notified Plaintiff that his Certified Candidacy for Ordained Ministry had been discontinued pursuant to BOD ¶ 313.1. [Defendant Exhibit P].  The Committee also cited "undermining the ministry of a pastor" as its reason for discontinuing Plaintiff's Candidacy. [Defendant

5

Exhibit P].

## IV.    DISCUSSION

The Free Exercise Clause of the United States Constitution protects "a church's right to decide matters of governance and internal organization."  Rweyemamu v. Cote, 520 F.3d 198, 208 (2d Cir. 2008).  The ministerial exception is a constitutional doctrine derived from this Clause that forbids federal courts from disturbing "the autonomy of religious institutions over ecclesiastical affairs" or entangling the courts in "religious questions."  Friedlander v. Port Jewish Center, 347 Fed. Appx. 654, 655 (2d Cir. 2009); Rweyemamu, 520 F.3d at 207.  The Second Circuit has expressly adopted this ministerial exception and construed it as jurisdictional in nature.  Rweyemamu, 520 F.3d at 207, 210. Therefore, in the Second Circuit, the exception is an appropriate ground for a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(1).  Id.  As such, it "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of a judgment."  Arbaugh v. Y & H Corp., 546 U.S. 500, 506 (2006).

Federal courts that apply the ministerial exception must consider both the function of the employee and the nature of the particular dispute to determine whether "excessive government entanglement with religion" could occur.  Rweyemamu, 520 F.3d at 208.  If the Court finds that the employee is "functionally a minister" and the dispute is "pervasively religious" in nature, the ministerial exception applies and the case must be dismissed for want of subject matter jurisdiction.  Id.

In Rweyemamu, the Second Circuit affirmed the dismissal of a Catholic priest's Title VII discrimination claim against his diocese because, to decide the case, the court

6

would have had to determine whether the priest was fired due to his "inadequate performance of his pastoral duties" as the diocese claimed, or whether the diocese's evaluation of the priest's pastoral performance was actually "not only erroneous, but also pretextual." Rweyemamu, 520 F.2d at 208-09.  The Second Circuit concluded that this question could not be answered without "impermissible entanglement" with the Church's religious doctrine.  Id.   As such, the priest's claim was dismissed for lack of subject matter jurisdiction as it "easily [fell] within" the boundaries of the ministerial exception.  Id.

In Hankins v. New York Annual Conference of United Methodist Church, 351 Fed. Appx. 489 (2d Cir. Oct. 30, 2009),  the Second Circuit applied Rweyemamu and held that the "constitutionally-based ministerial exception" required dismissal of a pastor's ADEA claim against the New York Annual Conference of United Methodist Church. Id. at 491. Because the pastor's "duties were that of an ordained United Methodist minister," and the Church took the allegedly illegal employment action because of a rule contained in the BOD, the case could not be decided without impermissibly entangling the Court with United Methodist Church doctrine.  Id.

Plaintiff has two causes of action against TAC: (1) a claim of discrimination and (2) a claim of retaliation.  Here, as in Rweyemamu, Plaintiff's causes of action easily fall within the ministerial exception.  First, Plaintiff fits within the definition of a "minister" because, as in Hankins, Plaintiff was a United Methodist Church pastor.  Second, both causes of action are "pervasively religious" in nature.  This is because Defendant has claimed that Plaintiff's license was revoked for religious reasons, by the proper Church authorities, and pursuant to Church doctrine.

To establish his Title VII gender discrimination claim, Plaintiff would have to prove

that, based on the circumstances surrounding his license revocation, his license was revoked for a discriminatory reason.[2]  To establish his Title VII retaliation claim, Plaintiff would have to prove that his protected activity was the real reason for his license revocation.[3]  Therefore, in order to decide the case, as in <u>Rweyemamu</u>, the Court would be forced to question the Church's administration in order to decide whether Plaintiff's pastoral license was revoked due to his violation of the United Methodist Church's governing doctrine, as Defendant claims, or whether the Defendant's reasons for deciding that Plaintiff violated the doctrine were actually "not only erroneous, but also pretextual" as Plaintiff claims.  This question cannot not be answered by the Court without impermissible entanglement with the United Methodist Church's religious doctrine.  As such, the constitutionally-based ministerial exception requires the dismissal of Plaintiff's claims against TAC for lack of subject matter jurisdiction.


**V.  CONCLUSION**

Based upon the reasons set forth above, Defendant's motion [Dkt. # 73] is **GRANTED**, and all claims against Troy Annual Conference of the United Methodist

---

[2]To establish a prima facie case of discrimination, a plaintiff must show: "(1) [he] is a member of a protected class; (2) [he] is qualified for [his] position; (3) [he] suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination."  <u>Lore v. City of Syracuse</u>, 583 F.Supp.2d 345, 361 (N.D.N.Y. 2008) (quoting <u>Weinstock v. Columbia Univ.</u>, 224 F.3d 33, 41 (2d Cir. 2000)).

[3]To establish a Title VII retaliation claim, a plaintiff must show that: "(1) [he] was engaged in protected activity; (2) the employer was aware of that activity; (3) [he] suffered an adverse employment action' and (4) there was a causal connection between the protected activity and the adverse employment action."  <u>Perez v. New York and Presbyterian Hosp.</u>, 2009 WL 3634038, at *15 (S.D.N.Y. November 3, 2009) (quoting <u>Reed v. A.W. Lawrence & Co., Inc.</u>, 95 F.3d 1170, 1178 (2d Cir. 1996)).

Church are **DISMISSED** for lack of subject matter jurisdiction.   The Clerk of the Court is instructed to close the file in this matter.


**IT IS SO ORDERED**

DATED:**October 7, 2010**



Thomas J. McAvoy
Senior, U.S. District Judge

9